JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-7181 JGB (KKx)** | Date | December 14, 2023 |
|---|---|---|---|
| Title | ***Deveon Peppers v. Pacific Office Automation, Inc.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):          Attorney(s) Present for Defendant(s):

None Present                    None Present

Proceedings:    **Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 16); and (2) VACATING the December 18, 2023 Hearing (IN CHAMBERS)**

Before the Court is Plaintiff Deveon Peppers' motion to remand. ("Motion," Dkt. No. 16.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the motions, the Court **GRANTS** the Motion and **VACATES** the December 18, 2023 hearing.

## I. BACKGROUND

On June 29, 2023, Plaintiff Deveon Peppers ("Plaintiff") filed a complaint in the Superior Court of California for the County of Los Angeles against Defendant Pacific Office Automation, Inc. ("Defendant") and Does 1 through 10, inclusive. ("Complaint," Dkt. No. 1-1.) The Complaint alleges ten causes of action: (1) violation of California Labor Code §§ 510 and 1198 for unpaid overtime; (2) violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 for unpaid minimum wages; (3) violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 for failure to provide meal periods; (4) violation of California Labor Code §§ 226.7, 516, and 1198 for failure to authorize and permit rest periods; (5) violation of California Labor Code §§ 226(a), 1174(d), and 1198 for non-compliant wage statements and failure to maintain accurate payroll records; (6) violation of California Labor Code §§ 201 and 202 for wages not timely paid upon termination; (7) violation of California Labor Code § 204 for failure to timely pay wages during employment; (8) violation of California Labor Code § 2802 for unreimbursed business expenses; (9) violation of California Business & Professions Code §§ 17200, et seq. for

unlawful business practices; and (10) violation of California Business & Professions Code §§ 17200, et seq. for unfair business practices.

On August 30, 2023, Defendant removed the action based on diversity jurisdiction. ("Notice of Removal," Dkt. No. 1.)  On September 29, 2023, Plaintiff filed the Motion.  (See Motion.)  Defendant opposed the Motion on October 16, 2023.  ("Opposition," Dkt. No. 18.)  On October 23, 2023, Plaintiff replied.  ("Reply," Dkt. No. 19.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute."  Gunn v. Minton, 568 U.S. 251, 256 (2013).  As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332.  A removing defendant must file a notice of removal within thirty days after receipt of the initial pleading.  Id. § 1446(b).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Jackson v. Specialized Loan Servicing, LLC, 2014 WL 5514142, at *6 (C.D. Cal. Oct. 31, 2014).  The court must resolve doubts regarding removability in favor of remanding the case to state court.  Id.

## III.   DISCUSSION

Neither party disputes that they are citizens of different states, as required by 28 U.S.C. § 1332(a).  (See Motion; Opposition.)  They dispute only whether Defendant has shown that the amount in controversy exceeds $75,000.

The Court first considers whether it is "facially apparent" from the Complaint that the jurisdictional amount has been satisfied.  See Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)).  Here, the Complaint states that Plaintiff, "on behalf of all others similarly situated," seeks "damages, unpaid wages, penalties, injunctive relief and attorneys' fees *in excess* of twenty-five thousand dollars ($25,000)."  (Complaint at 34.)  Because the Complaint only provides a baseline amount of damages, the amount in controversy is not "facially apparent."

When a complaint does not specify the amount of damages, "the court may examine facts in the complaint and evidence submitted by the parties." Simmons, 209 F. Supp. 2d at 1031. The jurisdictional minimum may be satisfied by claims for special and general damages, attorneys' fees, and punitive damages. See Conrad Assoc. v. Hartford Accident & Indem. Co., 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). The defendant bears the burden to establish the amount in controversy at removal. Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013). If "defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). This proof can include affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting Singer, 116 F.3d at 377). Additionally, the defendant may rely on "reasonable assumptions underlying the defendant's theory of damages exposure." Ibarra, 775 F.3d at 1198.

Plaintiff brings the Complaint on behalf of himself and putative class members. (See Complaint.) The Complaint is not removed under the Class Action Fairness Act ("CAFA"). (See Notice of Removal.) As such, the Court only considers the potential amount in controversy as it relates to the named Plaintiff, not to all potential class members. See Gibson v. Chrysler Corp., 261 F.3d 927, 941 (9th Cir. 2001) (holding that to determine the amount in controversy in diversity class actions, courts examine "only the claims of named class plaintiffs"). Defendant may, however, aggregate estimated damages across the individual Plaintiff's claims. See Simmons, 209 F. Supp. 2d at 1031. Here, Defendant aggregates damages across Plaintiff's ten claims to support its alleged amount in controversy. (Opposition at 10, 12.) Defendant's estimated amount in controversy, across all claims and including attorneys' fees, is $111,335.01. (Id.)

Plaintiff presents three arguments against Defendant's amount in controversy calculations: (1) Defendant should not be permitted to aggregate Plaintiff's claims on an individual basis as that methodology was not raised in the Notice of Removal; (2) Defendant fails to provide summary-judgment-type evidence to support removal; and (3) Defendant's calculations do not satisfy the preponderance of the evidence standard. (Reply at 2, 5, 7.)

As to Plaintiff's first argument, the Court finds that Defendant did raise its methodology in the Notice of Removal. The Notice of Removal discusses Plaintiff's claims on an individual basis and states, "combining Plaintiff's anticipated claims for lost earnings, the jurisdictional minimum is easily satisfied." (Notice of Removal at 8.) The Notice of Removal also quotes Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.: "[A]ggregation is permitted when a single plaintiff seeks to aggregate two more of his own claims against a single defendant." Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co., 465 F.2d 489, 491 (9th Cir. 1972); Notice of Removal at 6. As such, Defendant did indicate in its Notice of Removal that the amount in controversy estimate was based on an aggregation of Plaintiff's individual claims, not on an aggregation of claims across potential class members.

As to Plaintiff's second argument, the Court finds that Defendant has submitted summary-judgment-type evidence to support its amount in controversy estimate. "[E]vidence outside the complaint, including affidavits or declarations" is summary-judgment-type evidence. Ibarra, 775 F.3d at 1197. Here, Defendant has submitted a declaration from a licensed California attorney to estimate attorneys' fees ("LeCrone Decl.," Dkt. No. 18-2) and a declaration from Defendant's Vice President of IT Services to estimate Plaintiff's potential damages ("Miller Decl.," Dkt. No. 18-3.). Accordingly, the Court finds that Defendant has submitted appropriate evidence to support its estimates.

The Court therefore considers whether Defendant's amount in controversy estimates rely on "reasonable assumptions," and whether they satisfy the amount in controversy requirement by a preponderance of the evidence. Ibarra, 775 F.3d at 1198; Dart Cherokee Basin Operating Co., LLC, 135 S. Ct. at 554.

**A. Unpaid Overtime**

Plaintiff alleges that Defendant employed him as an hourly paid, non-exempt Field Service Technician from March 2019 to April 2023. (Complaint ¶ 4.) Based on Plaintiff's work locations, Defendant estimates that his weighted hourly average wage was $19.17 and his weighted hourly overtime average wage was $28.76. (Miller Decl. ¶ 6.) Defendant also estimates that Plaintiff worked 69 pay periods and 138 workweeks. (Id. ¶¶ 4-5.)

Defendant next estimates a once-per-week violation rate (e.g., one hour of unpaid overtime per week) "for purposes of these calculations," arriving at an amount in controversy of $3,968.88 for the unpaid overtime claim.[1] (Opposition at 13.) However, Defendant provides no basis for its violation rate in its Opposition or declarations, stating only that the rate is reasonable because Plaintiff's claim is based on a "pervasive pattern and practice." (Id.) Defendant must provide assumptions "grounded in real evidence." Ibarra, 775 F.3d at 1199. Courts regularly find that amount in controversy estimates for unpaid wage claims are unreasonable where defendants use unsupported violation rates—even rates as low as one hour per week. See Weaver v. Amentum Services, Inc., 2022 WL 959789, at *3 (S.D. Cal. Mar. 30, 2022) ("Defendant offers no evidence supporting that a one-hour-per-workweek violation rate is suitable for calculation purposes"); Holcomb v. Weiser Sec. Servs., Inc., 424 F. Supp. 3d 840, 847 (C.D. Cal. 2019) (finding that a violation rate was unreasonable where the defendant failed to justify a once-per-week violation rate "seemingly plucked from thin air"); Akana v. Estee Lauder Inc., 2019 WL 2225231, at *7 (C.D. Cal. May 23, 2019) (holding that a complaint did not support a one-per-week violation rate where the plaintiff alleged a "policy or practice" of not providing meal and rest breaks).

---

[1] $28.76 [estimated overtime rate] x 138 [workweeks] x 1 [one hour of overtime per week] = $3,968.88

Accordingly, the Court finds that Defendant has not provided sufficient evidence of the amount in controversy as to the unpaid overtime claim. The Court does not consider Defendant's estimate of unpaid overtime damages in its calculation of the amount in controversy.

## B. Unpaid Minimum Wages

Defendant estimates that the amount in controversy for unpaid minimum wages is $2,645.46, again using a once-per-week violation rate.[2] (Opposition at 13.) As discussed above, Defendant fails to provide evidence to support its assumed violation rate. Accordingly, the Court does not consider Defendant's estimate of unpaid minimum wages damages in its calculation of the amount in controversy.

## C. Section 1197.1 Penalties

Defendant adds $17,100 to its amount in controversy estimate for Labor Code Section 1197.1 penalties. (Opposition at 13.) However, though Plaintiff's second cause of action is brought in part under Section 1197.1, Plaintiff does not seek Section 1197.1 penalties in his prayer for relief. (Complaint at 35; Reply at 8 ("Plaintiff is not seeking section 1197.1 penalties nor are there any allegations in the Complaint where he specifically seeks section 1197.1 penalties.").) Accordingly, the Court does not consider Section 1197.1 penalties in its calculation of the amount in controversy.

## D. Meal and Rest Break Violations

Under California law, employees are entitled to two hours of premium pay for each day that they miss both a meal break and a rest break. See Marlo v. United Parcel Service, Inc., 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009).

Defendant contends that the application of a 100% violation rate is warranted based on Plaintiff's allegations that Defendant's "policy and practice" prevented him from taking meal and rest breaks, but ultimately applies a "conservative" 40% violation rate to its calculations. (Opposition at 14-15.) Plaintiff responds that Defendant's 40% violation rate is not based in evidence and that Defendant's estimates should be disregarded. (Reply at 8.) Courts in the Ninth Circuit are split on this matter. See Compton v. American Management Services, 2011 WL 13217963, at *4 (C.D. Cal. Feb. 24, 2011) (granting remand where defendants did not "offer any evidence of the number of missed meal or rest periods"); Sanders v. Old Dominion Freight Line, Inc., 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation."). Compare Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) (finding a 100% violation rate reasonable where the plaintiff alleged class members were required to work without breaks and the complaint did not allege a more precise calculation); Hull v. Mars Petcare US, Inc., 2018 WL

---

[2] $19.17 [estimated hourly rate] x 138 [workweeks] x 1 [one hour per week] = $2,645.46

3583051, at *4 (C.D. Cal. July 25, 2018) (finding "an assumption of three missed rest periods and meal periods each week" was reasonable because courts "routinely find a 60% [violation rate] assumption reasonable").

Here, the Court agrees with Defendant's application of a 40% violation rate.  Like the plaintiff in Coleman, Plaintiff only "broadly alleges his wage-and-hour violations."  Coleman, 730 F. Supp. 2d at 1150.  He alleges that "Defendants *regularly* failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour period worked."  (Complaint ¶ 80.)  He also alleges that "Defendants' company-wide scheduling policies and practices . . . prevented Plaintiff and class members from being able to take rest periods."  (Id.)  Finally, Plaintiff alleges that Defendant "*maintained* a company-wide on-premises rest period policy" throughout the relevant period, which "restricted [Plaintiff and class members] from leaving the premises during rest periods."  (Id.)  Given these allegations, it is reasonable to assume that Plaintiff was consistently and frequently denied rest breaks for the purposes of an amount in controversy calculation.  The Court finds that Defendant's 40% violation rate is reasonable, especially because courts "routinely find a 60% [violation rate] assumption reasonable."  Hull, 2018 WL 3583051, at *4.

Under the 40% violation rate assumption, Defendant's estimated amount in controversy for the meal and rest period claims is **$10,581.84**.[3]  (Opposition at 15.)

**E.  Waiting Time Penalties**

Plaintiff alleges that he was not paid all wages owed at the time of his termination, a violation of Labor Code Section 201.  (Complaint at 24-25.)  Defendant assumes the maximum waiting time penalty for a delay of 30 days, as "well over 30 days [have] elapsed since [the termination]."  (Opposition at 16.)  Using this assumption, Defendant's estimated amount in controversy for waiting time penalties is $5,040.00.[4]  (Id.)

However, the Complaint alleges that Defendant terminated Plaintiff on April 25, 2023, and did not provide him with his final pay until April 26, 2023.  (Complaint ¶ 96; Reply at 9.)  This allegation supports a delay of 1 day, not 30 days.  As such, Defendant's 30-day assumption is unreasonable, and the Court does not consider the waiting time penalties in its calculation of the amount in controversy.

**F.  Wage Statement Penalties**

Plaintiff's wage statement claim is derivative of his overtime and meal and rest period violations.  (Complaint at 22.)  Here, Defendant assumes an amount in controversy of $4,000, the statutory maximum for damages, without explanation.  (Opposition at 16.)  Given Defendant's lack of evidence to support this estimate, and because the Court has determined that

---

[3] $19.17 [estimated hourly rate] x 138 [workweeks] x 4 [violations per week] = $10,581.84
[4] $21.00 [Plaintiff's final wage] x 8 [hours per workday] x 30 [workdays] = $5,040.00

Defendant's unpaid overtime estimate is unreasonable, the Court cannot conclude that the wage statement estimate is supported "by a preponderance of the evidence." Dart Cherokee Basin Operating Co., LLC, 135 S. Ct. at 554; see also Weaver, 2022 WL 959789, at *4 ("If Defendant's calculations for missed meal and rest periods are faulty, then the wage statement violation calculations are also inherently flawed."). Accordingly, the Court does not consider the wage statement penalties in its calculation of the amount in controversy.

**G. Section 210 Penalties**

Labor Code Section 210 provides the penalties for a violation of Labor Code Section 204 (failure to timely pay wages). (Complaint ¶ 104.) The penalties available under Section 210 are $100 for any initial violation, plus $200 for each subsequent violation and 25% of the wages unlawfully withheld. Cal. Lab. Code § 210. Here, Defendant assumes a violation for each of the 69 pay periods Plaintiff was employed and assumes that all the overtime wages, minimum wages, meal break penalties, and rest break penalties it calculated above were unlawfully withheld. (Opposition at 9.) Under this assumption, Defendant arrives at an amount in controversy estimate of $17,998.83.[5] (Id.)

There are two problems with Defendant's estimate. First, the estimate is based on amount in controversy calculations for overtime and minimum wage violations that this Court has determined are unreasonable. See Weaver, 2022 WL 959789, at *4 ("If Defendant's calculations for missed meal and rest periods are faulty, then the wage statement violation calculations are also inherently flawed."). Second, Defendant assumes violations of each claim— overtime wages, minimum wages, and meal and rest breaks—for each pay period, which encompasses nearly four years of employment. (Miller Decl. ¶¶ 4-5; Complaint ¶ 4.) However, Section 210's statute of limitations is one year, so Plaintiff can only seek penalties for a portion of his employment with Defendant. See Cal. Code Civ. Proc. § 340; Reply at 10. It is therefore unreasonable for Defendant to assume penalties for all 69 wage periods in its calculation.

Accordingly, the Court finds that Defendant's estimate of Section 210 penalties is unreasonable and does not consider these penalties in its amount in controversy calculation.

**H. Attorneys' Fees**

Finally, Defendant estimates that Plaintiff's attorneys' fees through trial would "comfortably meet or exceed" $50,000. (Opposition at 16.) Thus far, the only reasonable amount in controversy calculation Defendant has provided is an estimate of $10,581.84 for meal and rest break penalties. Were the Court to accept Defendant's $50,000 estimate of attorneys' fees, the total alleged amount in controversy would be $60,581.84—less than the $75,000 necessary to establish diversity jurisdiction.

---

[5] $100 [initial violation] + ($200 x 68 [pay periods after initial violation]) + (25% x ($3,968.88 [overtime estimate] + $2,645.46 [minimum wage estimate] + $10,581.84 [meal and rest break penalties])) = $17,988.83

Accordingly, the Court does not analyze Defendant's attorneys' fees estimate, and finds that Defendant has not met its burden of establishing the required amount in controversy by a preponderance of the evidence.  See Rodriguez, 728 F.3d at 981; Dart Cherokee Basin Operating Co., LLC, 135 S. Ct. at 554.

## IV.   CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's motion to remand and **REMANDS** this action to the California Superior Court for the County of Los Angeles.  The Court **VACATES** the December 18, 2023 hearing.

**IT IS SO ORDERED.**